UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MICHAEL J. MONROE,                              :
                Plaintiff,          :
                                        :

v.                                              :          **OPINION AND ORDER**
                                        :
JOULIANA, HSA Nurse Administrator;              :          20 CV 6807 (VB)
LIEUTENANT JOHN BYRON; CAPTAIN J.C.             :
JISKA;[1] and COUNTY OF ROCKLAND,               :
                Defendants.         :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Michael J. Monroe, proceeding pro se and in forma pauperis, brings this action

pursuant to 42 U.S.C. § 1983 against the County of Rockland, as well as individual defendants

Jouliana Petranker ("Nurse Jouliana"), the Health Services Administrator at Rockland County

Correctional Facility ("RCCF"); RCCF Grievance Coordinator Lieutenant John Byron; and

RCCF Chief Administrative Officer Captain John C. Jiska.  Plaintiff alleges defendants violated

his Fourteenth Amendment rights.

Now pending is defendants' motion to dismiss the amended complaint ("AC") pursuant

to Rule 12(b)(6).  (Doc. #47).

For the reasons set forth below, the motion is GRANTED.  However, plaintiff is granted

leave to file a second amended complaint, as specified below.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-

---

[1]     The parties refer to defendant "Jiska" as both "Jiska" (Doc. #56) and "Liska."  (Doc.
#40).  The Court will refer to this defendant as defendant "Jiska."

pleaded factual allegations in the AC,[2] and draws all reasonable inferences in plaintiff's favor, as summarized below.

At all relevant times, plaintiff was a pretrial detainee at RCCF in New City, New York.

Plaintiff alleges he suffers from various medical conditions that heighten his risk of severe illness or death from COVID-19, including diabetes, hypertension and obesity.

Plaintiff describes RCCF, in turn, as a "a hot bedded breeding ground for COVID-19." (Pl. Opp. at ECF 7).[3]  Specifically, plaintiff alleges RCCF provides N95 masks to its staff, but not even surgical masks to the inmates; provides soap and cleaning supplies to inmates, but not gloves or hand sanitizer wipes; fails to enforce social distancing; and utilizes an air filtration system that "possibly" lacks modern anti-viral filters.

Plaintiff alleges that beginning in July 2020, he repeatedly asked defendants for a mask[4] to wear "at all times when out of his cell," but was repeatedly denied  (Pl. Opp. at ECF 30).

---

[2]     On August 8, 2020, plaintiff filed his original complaint.  (Doc. #2).  On January 15, 2021, the Court granted plaintiff's request to amend his original complaint.  (Doc. #38).  On January 26, 2021, plaintiff filed the AC.  (Doc. #40).  In his opposition to defendants' motion to dismiss (Doc. #54 ("Pl. Opp.")), plaintiff included additional allegations to support his claim that were raised for the first time, and attached several exhibits that were not attached to the AC. Because plaintiff is proceeding pro se, the Court will consider both the additional allegations in plaintiff's opposition and the attached exhibits.  See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).  Accordingly, textual references to the "amended complaint" in this opinion refer to both the AC and to plaintiff's opposition (Pl. Opp.).

Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[3]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[4]     Unless otherwise indicated, references to "masks" refer to surgical or non-N95 facemasks.

Plaintiff further alleges he filed a formal grievance on July 3, 2020, which Lt. Byron formally denied on July 7, 2020, and that Capt. Jiska affirmed the denial on July 10, 2020.

Plaintiff's supporting documents reflect that Lt. Byron reassured plaintiff that staff "wear masks to not only protect [themselves] but also to protect the inmate population" (Pl. Opp. at ECF 30), and Nurse Jouliana reviewed the facility's health protocols—including immediate quarantine and screening for incoming inmates—and concluded RCCF complied with then-current state health and safety protocols.

Plaintiff alleges he tested positive for COVID-19 on January 30, 2021, after at least three additional instances in December 2020 and January 2021 when he was potentially exposed and thus quarantined and tested at the prison.  Plaintiff alleges he now suffers a loss of his senses of taste and smell, body and joint aches, difficulty breathing, and fatigue.  According to plaintiff, RCCF began distributing masks to inmates only nine days prior to his positive COVID-19 test, on January 21, 2021.

## DISCUSSION

I.   <u>Standard of Review</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).[5]  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id.</u> at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

---

[5]      Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556). A complaint including only "labels and conclusions" or "naked assertions devoid of further factual enhancement" does not meet the plausibility standard. Id.

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.    Conditions of Confinement Claim

Defendants argue plaintiff fails plausibly to allege a claim for deliberate indifference to

his conditions of confinement under the Fourteenth Amendment. [6]

The Court agrees.

A.      Legal Standard

A conditions of confinement claim brought by a pretrial detainee is analyzed under the

Due Process Clause of the Fourteenth Amendment instead of the Cruel and Unusual

Punishments Clause of the Eighth Amendment, because "pretrial detainees have not been

convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually

nor otherwise."  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional

conditions of confinement by showing that the officers acted with deliberate indifference to the

challenged conditions."  Darnell v. Pineiro, 849 F.3d at 29.  To state such a claim, plaintiff's

allegations must satisfy two prongs:  an objective prong and a mens rea prong.  Namely, plaintiff

must plausibly allege "that the challenged conditions were sufficiently serious," and defendants

"acted with at least deliberate indifference to the challenged conditions."  Id.

To plead the objective prong, a pretrial detainee must plausibly allege the

challenged conditions, "either alone or in combination, pose[d] an unreasonable risk of serious

damage to his health."  Darnell v. Pineiro, 849 F.3d at 30 (quoting Walker v. Schult, 717 F.3d

119, 125 (2d Cir. 2013)).  There is no "'static test' to determine whether a deprivation is

---

[6]      Construed liberally, plaintiff's allegations may also be understood as a claim for
deliberate indifference to medical needs, also under the Fourteenth Amendment.  But when, "as
here, a communicable disease renders the general conditions of confinement dangerous to [a
plaintiff's]' health, and meeting [the plaintiff's] medical needs requires that [the defendants] take
specific measures to prevent their infection, the conditions of confinement and unmet medical
needs claims essentially merge."  Arias v. Decker, 459 F. Supp. 3d 561, 573 n.4 (S.D.N.Y.
2020).

sufficiently serious; instead, the 'conditions themselves must be evaluated in light of contemporary standards of decency.'"  Id.  (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)).  Although "the Constitution does not mandate comfortable prisons, prisoners are entitled to basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety."  Randle v. Alexander, 960 F. Supp. 2d 457, 474–75 (S.D.N.Y. 2013).

To plead the mens rea prong, a pretrial detainee must plausibly allege "the defendant-official acted intentionally to impose the alleged conditions, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk.  Darnell v. Pineiro, 849 F.3d at 35.  The Fourteenth Amendment mens rea prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm."  Id.  Mere negligence by the prison official, however, does not satisfy the mens rea requirement.  See id. at 36.

B.    Personal Involvement

To state a Section 1983 claim, a plaintiff must also "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  The complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order).  A plaintiff cannot "lump[ ] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct."  Id. Moreover, "there's no special rule of liability for supervisors," as "[t]he violation must be established against the supervisory official directly."  Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020).

6

C.    Application

   1.    Capt. Jiska and Lt. Byron

Here, plaintiff fails to plead the personal involvement of Capt. Jiska and Lt. Byron in the allegedly unconstitutional failure to provide plaintiff with a mask.  Plaintiff merely "lumps" Jiska and Byron into conclusory, catchall allegations, such as "Defendants acted intentionally to impose the conditions of [RCCF]."  (Pl. Opp. at ECF 10).  Indeed, outside of its caption, the amended complaint "does not even mention [Jiska and Byron] by name in the factual allegations contained in the [c]omplaint."  See Perez v. Semple, 2018 WL 6435651, at *3 (D. Conn. Dec. 7, 2018) (dismissing deliberate indifference cause of action for failure to allege personal involvement).

The grievance denials attached to plaintiff's amended complaint reference both Capt. Jiska and Lt. Byron, but those documents reflect only that both defendants based their denials on Nurse Jouliana's review of plaintiff's medical history and the facility's health protocols.  (See, e.g., Pl. Opp. at ECF 32 ("HSA Jouliana and the medical staff are aware of the current crisis and the grievant['s] past medical history.")).  Such deference to the independent judgment of the facility's lead health care professional does not establish the degree of personal involvement necessary to survive a motion to dismiss.  See Crosby v. Petermann, 2020 WL 1434932, at *10 (S.D.N.Y. Mar. 24, 2020) (dismissing medical indifference cause of action when defendant superintendent "made a decision [on a grievance] based on a review of the medical record and the results of [the nurse administrator's] investigation").

Accordingly, plaintiff's claims against Capt. Jiska and Lt. Byron fail for lack of personal involvement, and must be dismissed.

2.      <u>Nurse Jouliana</u>

Construed liberally, the amended complaint alleges Nurse Jouliana denied plaintiff's request for a mask despite knowing plaintiff suffered from conditions that heightened his chances of severe illness or death due to COVID-19, and lived in the type of congregate facility itself associated with an increased chance of exposure to COVID-19.

Defendants argue that these allegations, without more, fail plausibly to state a claim for deliberate indifference to conditions of confinement under the Fourteenth Amendment.

The Court agrees.

Under the objective prong of the deliberate indifference analysis, courts evaluate the substantial risk of serious harm to a prisoner from COVID-19 in light of the totality of the conditions and precautions taken at the prison.  <u>Chunn v. Edge</u>, 465 F. Supp. 3d 168, 200-01 (E.D.N.Y. 2020).  Accordingly, the risk of serious harm to plaintiff arising out of the denial of a mask should be considered alongside related conditions and precautions that <u>also</u> affect an inmate's exposure to COVID-19, such as social distancing, cleaning supplies, and ventilation, among other conditions.  <u>See, e.g.</u>, <u>Cosme v. Faucher</u>, 2021 WL 5111863, at *4 (D. Conn. Nov. 3, 2021) (prison's alleged denial of masks to inmates <u>and</u> failure to quarantine infected inmates plausibly stated sufficiently serious risk of harm from COVID-19); <u>Gil-Cabrera v. Dep't of Corr.</u>, 2021 WL 5282620, at *4 (S.D.N.Y. Sept. 27, 2021) (serious harm from COVID-19 plausibly alleged by a lack of social distancing <u>and</u> failure to screen new inmates).

Here, plaintiff fails adequately to plead necessary facts regarding the conditions at RCCF to properly evaluate the risk of harm to plaintiff by not wearing a mask.  At most, plaintiff alleges "definitely a lack of social distancing" between inmates and staff; "definitely insufficient cleaning [at RCCF] in general;" the "possibility that [RCCF] doesn't have [the] antiviral filters

that are required;" and the risk of "numerous" inmates exposed to COVID-19.  (Pl. Opp. at ECF 8, 9, 29).  These vague and speculative allegations "impede this court's ability to determine whether [Nurse Jouliana's alleged refusal to provide plaintiff a mask] rises to the level of a constitutional violation."  Montes v. O'Shea, 2021 WL 1759853, at *8 (N.D.N.Y. Apr. 6, 2021) (allegations of unsanitary conditions at a prison, standing alone, failed to rise to the level of objective harm); Cf. Perez v. Barone, 2021 WL 538130, at *3 (D. Conn. Feb. 15, 2021) (plaintiff plausibly alleged that denial of N-95 mask while confined in a single cell with another inmate posed a serious risk of harm from COVID-19).

Indeed, plaintiff's own supporting documents suggest Nurse Jouliana and the RCCF medical staff implemented safety precautions that likely minimized the risk of serious harm posed by not wearing a mask.  For example, as Lt. Byron allegedly told plaintiff himself, the N-95 masks worn by the staff functioned to protect both inmates and staff.  And as plaintiff's supporting documents reflect, RCCF implemented COVID screening procedures for all incoming inmates, as well as COVID-19 tests and quarantine for potentially exposed inmates already housed in the facility.  In the absence of additional well-pleaded allegations regarding conditions at the prison itself, such procedures undercut plaintiff's conclusory statements regarding the risk of harm from COVID-19 at RCCF.

Because plaintiff fails to adequately plead the objective prong, the Court need not reach the mens rea prong.

Accordingly, plaintiff's claims against Nurse Jouliana must be dismissed.[7]

---

[7]    Defendants also argue plaintiff's claims for compensatory damages should be dismissed under Section 1997(e) of the Prison Litigation Reform Act, as plaintiff alleges only emotional and psychological, but not physical damages, and plaintiff's claims should be dismissed for failure file a notice of claim.  The Court does not reach either argument, as plaintiff fails outright to state a plausible Fourteenth Amendment claim against any of the defendants.

III.   <u>Monell Claim Against the County of Rockland</u>

Because plaintiff has not adequately pleaded an underlying violation of his constitutional rights, his <u>Monell</u> claim against the County must be dismissed.  <u>See</u> <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006) (district court "was entirely correct" in declining to address <u>Monell</u> claim after finding no underlying constitutional violation).

IV.   <u>Leave to Amend</u>

Fed. R. Civ. P. 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires."  Liberal application of Rule 15(a) is warranted with respect to <u>pro se</u> litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim."  <u>Matima v. Celli</u>, 228 F.3d 68, 81 (2d Cir. 2000).  District courts "should not dismiss [a <u>pro se</u> complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000).

Here, because a liberal reading of the amended complaint indicates a valid Fourteenth Amendment claim <u>might</u> be stated against defendants, the Court grants plaintiff leave to file a second amended complaint to replead his conditions of confinement claim arising out of plaintiff's alleged exposure to COVID-19 at RCCF, but only as against the individual defendants, to the extent plaintiff can do so clearly, concisely, truthfully, and plausibly.

To the greatest extent possible, plaintiff's second amended complaint must address the deficiencies identified in this Opinion and Order, and must at a minimum:

1.   Describe all relevant events, stating the facts that support plaintiff's case, including what the individual defendants personally did or failed to do.

2.     Describe in more detail additional conditions at RCCF that affect the risk of harm at the prison due to COVID-19.  For example, plaintiff should include clear and concrete facts to support his conclusions that RCCF has not enforced social distancing, such as, among other things, examples of being in close proximity to others during communal activities at the prison.

Essentially, the body of plaintiff's second amended complaint must tell the Court:  who violated his federally protected rights, what facts show that his federally protected rights were violated, when such violation occurred, where such violation occurred, and why plaintiff is entitled to relief.

**Plaintiff is reminded that any factual allegations in the second amended complaint must be true to the best of his knowledge, information, and belief.  See Fed. R. Civ. P. 11(b)(3).  Also, the second amended complaint will completely replace the amended complaint and its attachments.  Therefore, plaintiff should include in the second amended complaint all information necessary for his claim.  However, plaintiff is directed to include in his second amended complaint only those facts and documents he believes plausibly support a violation of his constitutional rights.**

### CONCLUSION

The motion to dismiss is GRANTED.  However, plaintiff is granted leave to file a second amended complaint as to his claim for deliberate indifference to conditions of confinement as against the individual defendants only, in accordance with the instructions above.

Plaintiff shall file his second amended complaint by no later than January 20, 2022, using the second amended complaint form enclosed with this Opinion and Order.  **If plaintiff fails to file a second amended complaint or seek additional time to do so by January 20, 2022, the Court will deem plaintiff to have abandoned this case, direct the Clerk to enter judgment in defendants' favor, and close the case.**

11

The Clerk is instructed to terminate the motion.  (Doc. #47).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this Opinion and Order, as well as the second amended complaint form, to plaintiff at the address on the docket.

Dated:  December 20, 2021
        White Plains, NY

SO ORDERED:


_____
Vincent L. Briccetti
United States District Judge